## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA McENTEE, CHRISTINE GEARIN, JULIA CARLSON, MICHELLE PROVITOLA, JULIE DiGIROLAMO, DOROTHY CLARKE, JEANNE ARSENAULT, STACEY BARNES, MARCO BUZZANGA, DONNA CIULLA, JENNIFER JASILEWICZ, LAUREN MELLO, ERIKA CARDINALE, JENNIFER CORDY, LAUREN HETRICK, MARIAM MOMJIAN, PATRICIA MURPHY, RACHAEL SOUCIA, FELICIA DELA CRUZ, ANGELA CHANDLER, MARY DICKENS, DESIREE LETELLIER, MARY O'CONNOR, BROOKE GROMYKO, MIRLENE LUCAS, AMY DURETTE, | |
| **Plaintiffs,** | Civil Action No.: 1:22-cv-11952 |
| v. | |
| BETH ISRAEL LAHEY HEALTH, INC., BETH ISRAEL DEACONESS HOSPITAL- PLYMOUTH, INC. NORTHEAST HOSPITAL CORPORATION. BETH ISRAEL DEACONESS MEDICAL CENTER, INC.; WINCHESTER HOSPITAL. BETH ISRAEL LAHEY HEALTH PRIMARY CARE, INC., MOUNT AUBURN HOSPITAL; NORTHEAST PROFESSIONAL REGISTRY OF NURSES, INC. | |
| **Defendants.** | |

## FIRST AMENDED COMPLAINT AND JURY TRIAL DEMAND

# I. PARTIES

1. Plaintiff, Patricia McEntee, BSN, RN, CEN, (hereinafter, "McEntee") is a resident of Forestdale, Massachusetts and was employed as a Staff Registered Nurse in the Emergency Department at Beth Israel Deaconess Hospital- Plymouth, located in Plymouth, Massachusetts.

2. Plaintiff, Christine Gearin, (hereinafter, "Gearin") is a resident of Byfield, Massachusetts and was employed as a Registered Nurse in the Critical Care Unit at Beverly Hospital[1], located in Beverly, Massachusetts.

3. Plaintiff, Julia Carlson, RN, BSN, CCRN, (hereinafter, "Carlson") is a resident of Georgetown, Massachusetts and was employed as a Staff Nurse in the Critical Care Unit at Beverly Hospital, located in Beverly, Massachusetts.

4. Plaintiff, Michelle Provitola, RN, BSN (hereinafter, "Provitola") is a resident of Pembroke, Massachusetts and was employed as a Registered Nurse on a Medical Surgery- Telemetry Floor, at Beth Israel Deaconess Hospital- Plymouth, located in Plymouth Massachusetts.

5. Plaintiff, Julie DiGirolamo (hereinafter, "DiGirolamo") is a resident of Plymouth, Massachusetts and was employed as a Cardiac Echotechnologist at Beth Israel Deaconess Hospital- Plymouth, located in Plymouth, Massachusetts.

6. Plaintiff, Dorothy Clarke, RN, BSN, (hereinafter, "Clarke") is a resident of Plymouth, Massachusetts and was employed as a Clinical Nurse II in the Neo-natal Intensive Care Unit, at Beth Israel Deaconess Medical Center, located in Boston, Massachusetts.

---

[1] Beverly Hospital operates under the name of "Northeast Hospital Corporation" per the Massachusetts Secretary of State website.

7. Plaintiff, Jeanne Arsenault (hereinafter, "Arsenault") is a resident of Peabody, Massachusetts and was employed as a Clinical Nurse II at Beth Israel Deaconess Medical Center, in Boston, Massachusetts.

8. Plaintiff, Stacey Barnes, RN (hereinafter, "Barnes") is a resident of North Weymouth, Massachusetts and was employed as a Certified Wound Nurse at Beth Israel Deaconess Hospital- Plymouth, located in Plymouth, Massachusetts.

9. Plaintiff, Marco Buzzanga (hereinafter, "Buzzanga") is a resident of Wilmington, Massachusetts and was employed as a Clinical Associate at Winchester Hospital, located in Winchester, Massachusetts.

10. Plaintiff, Donna Ciulla (hereinafter, "Ciulla") is a resident of Cape Neddick, Maine and was employed as a Pharmacist at Beverly Hospital, located in Beverly, Massachusetts.

11. Plaintiff, Jennifer Jasilewicz (hereinafter, "Jasilewicz") is a resident of Andover, Massachusetts and was employed as a Registered Nurse in the Emergency Department at Beverly Hospital, located in Beverly, Massachusetts.

12. Plaintiff, Lauren Mello, RN, BSN, CW, OCN (hereinafter, "Mello") is a resident of Plymouth, Massachusetts and was employed as a Certified Wound Nurse at Beth Israel Deaconess Hospital- Plymouth, located in Plymouth, Massachusetts.

13. Plaintiff, Erika Cardinale (hereinafter, "Cardinale") is a resident of Newfield, New Hampshire and was employed as an Occupational Therapist at Beth Israel Lahey Health Primary Care- Maple Street, in Danvers, Massachusetts.

14. Plaintiff, Jennifer Cordy (hereinafter, "Cordy") is a resident of Beverly, Massachusetts and was employed as a Patient Access Representative at Beverly Hospital, located in Beverly, Massachusetts.

15. Plaintiff, Lauren Hetrick (hereinafter, "Hetrick") is a resident of Pembroke, Massachusetts and was employed as a Unit Coordinator and a Cardiac Telemetry Technician at Beth Israel Deaconess Medical Center, located in Boston, Massachusetts.

16. Plaintiff, Mariam Momjian (hereinafter, "Momjian") is a resident of Billerica, Massachusetts and was employed as an Office Coordinator and a Supervisor at Mount Auburn Hospital, located in Cambridge, Massachusetts.

17. Plaintiff, Patricia Murphy (hereinafter, "Murphy") is a resident of Taunton, Massachusetts and was employed as a Medical Assistant at Beth Israel Lahey Health Primary Care- Pond Street, in Sharon, Massachusetts.

18. Plaintiff, Rachael Soucia (hereinafter, "Soucia") is a resident of Brighton, Massachusetts and was employed as a Managed Care Coordinator, who was working fully remote since March of 2020, at Beth Israel Deaconess Medical Center, located in Boston, Massachusetts.

19. Plaintiff, Felicia Dela Cruz (hereinafter, "Dela Cruz") is a resident of Chelmsford, Massachusetts and was employed as a Registered Nurse at Mount Auburn Hospital, located in Cambridge, Massachusetts.

20. Plaintiff, Angela Chandler, PT, DPT, (hereinafter, "Chandler") is a resident of Derry, New Hampshire and was employed as a Physical Therapist at Northeast Professional Registry of Nurses, Inc., located in Beverly, Massachusetts.

21. Plaintiff, Mary Dickens, RN (hereafter "Dickens"), is a resident of Plainville, Massachusetts and was employed as a registered nurse by the Defendant BILHPC at its location in Needham, Massachusetts.

22. Plaintiff, Desiree Letellier, (hereafter "Letellier") is a resident of Dracut. Massachusetts and was employed by the Defendant Winchester Hospital as a Registered Nurse.

23. Plaintiff. Mary O'Connor (hereafter "O'Connor") is a resident of Reading, Massachusetts and employed by Winchester Hospital for 44 years as a Registered Nurse.

24. Plaintiff, Brooke Gromyko (hereafter "Gromyko"), is a resident of Salem New Hampshire and was employed by the Defendant BILH for 6 years before her wrongful termination.

25. Plaintiff, Mirlene Lucas (hereinafter "Lucas") is a resident of Beverly, Massachusetts and worked for Defendant BILH for 23 years before being wrongfully terminated.

26. Plaintiff, Amy Durette, is a resident of Hanson, Massachusetts who worked for BILH before being wrongfully terminated.

27. Collectively, the twenty-six (26) Plaintiffs will be referred to as the "Plaintiffs".

28. Defendant, Beth Israel Lahey Health, Inc., (hereinafter, "BILH") is a duly organized Massachusetts corporation allegedly for charitable, scientific and educational purposes within the meaning of Section 501 (C)(3) of the Internal Revenue Code and has been formed to "maintain and operate charitable hospitals and services associated with charitable hospitals, to advance education and research

5

in providing care to the sick and injured and in training health care professionals, and to promote the general health of the community". BILH has a principal office location of 20 University Road, Suite 700, Cambridge, Massachusetts, 02138.

29. BILH is the second largest healthcare system in Massachusetts and contains a number of affiliated hospitals, which are operated and administered in part, in common.

30. Defendant Beth Israel Deaconess Hospital- Plymouth, Inc., (hereinafter, BID-Plymouth") is a corporation with the object to carry educational activities related to the providing of care to the sick and injured and to promote and carry-on scientific research related to the care of the sick and injured with a principal office location of 275 Sandwich Street, Plymouth, Massachusetts 02360.

31. Defendant Northeast Hospital Corporation (hereinafter, "NHC") is a corporation exclusively for charitable, scientific and educational purposes within the meaning of Section 501 (C)(3) of the Internal Revenue Code and has been formed to "maintain and operate charitable hospitals and services associated with charitable hospitals, to advance education and research in providing care to the sick and injured and in training health care professionals, and to promote the general health of the community". NHC has a principal office location of 85 Herrick Street, Beverly, Massachusetts 01915.

32. Defendant Beth Israel Deaconess Medical Center, Inc., (hereinafter, BIDMC") is a corporation with the object of providing medical and hospital services for the sick and disabled with a principal office location of 330 Brookline Avenue, Boston, Massachusetts 02105.

33. Defendant Winchester Hospital (hereinafter, "Winchester") is a corporation exclusively for charitable, scientific and educational purposes within the meaning of Section 501 (C)(3) of the Internal Revenue Code and has been formed to "maintain and operate charitable hospitals and services associated with charitable hospitals, to advance education and research in providing care to the sick and injured and in training health care professionals, and to promote the general health of the community". Winchester has a principal office location of 41 Highland Avenue, Winchester, Massachusetts 01890.

34. Defendant Beth Israel Lahey Health Primary Care, Inc. (hereinafter, BILHPC is an Massachusetts Corporation which is an affiliate and/or subsidiary of BILH, with a primary business location of 480 Maple Street, Danvers, Massachusetts 01823 and does business under various names to the public including Beth Israel Lahey Health Primary Care – Maple Street and  Beth Israel Lahey Health Primary Care – Pond Street.

35. Defendant Mount Auburn Hospital (hereinafter, "Mount Auburn") is a corporation exclusively for charitable, scientific and educational purposes within the meaning of Section 501 (C)(3) of the Internal Revenue Code and has been formed to "maintain and operate charitable hospitals and services associated with charitable hospitals, to advance education and research in providing care to the sick and injured and in training health care professionals, and to promote the general health of the community". Mount Auburn has a principal office location of 330 Mount Auburn Street, Cambridge, Massachusetts 02138.

36. Defendant Northeast Professional Registry of Nurses, Inc., (hereinafter, "Northeast") is a corporation exclusively for charitable, scientific and educational purposes within the meaning of Section 501 (C)(3) of the Internal Revenue Code and has been formed to "maintain and operate charitable hospitals and services associated with charitable hospitals, to advance education and research in providing care to the sick and injured and in training health care professionals, and to promote the general health of the community". Northeast has a principal office location of 600 Cummings Center, Suite 270X, Beverly, Massachusetts 01915.

37. The Defendants BID- Plymouth, NHC, BIDMC, Winchester, BILH- Maple Street, Mount Auburn, BILH- Pond Street, and Northeast are each affiliates and subsidiaries of the Defendant BILH and BILH has at all relevant times in this matter participated with each of said other Defendants with respect to the facts alleged herein and specifically with the establishment of policies and procedure relative to requiring employees to receive the COVID-19 Vaccine as a condition of remaining employed, including definition and procedure relating to exemptions for religious beliefs.

38. The Defendants BILH, BID-Plymouth, NHC, BIDMC, Winchester, BILH- Maple Street, Mount Auburn, BILH- Pond Street, and Northeast are collectively herein referred to as "Defendant" or "Defendants", as the context required unless otherwise specifically stated.

## II.  JURISDICTION

39.  The Court has jurisdiction in this matter pursuant to 42 U.S.C § 1983 and Sec

2000e-5 (f) and 28 U.S.C §§ 2201, 2202 and Sec 1331 and 1343 (a) and has

supplemental jurisdiction over State law claims.

## UNITED STATES EQUAL OPPORTUNITY COMMISSION ("EEOC") CHARGE

40.  The Plaintiffs filed timely charges with the EEOC. The EEOC has issued all of the

Plaintiffs their "right-to-sue" notices. The Plaintiffs bring this lawsuit within ninety

(90) days of receipt of their right-to-sue notices. All preconditions for filing this

lawsuit have been performed or have occurred.

## III.  FACTS

41.  All of the Defendants are employers within the meaning of 42 U.S.C. Sec 2000e (b)

and M.G.L. C 151B, Sec1(5).

42.  Commensurate with the outbreak of the COVID-19 virus (hereinafter, "COVID-

19") and continuing to date, Defendants issued a number of policies with respect to

their employees, patients and visitors with the stated goal of protecting all of same

from the ravages of COVID-19, including the prospect of contracting and/or

spreading same.

43.  During the entire period since the outbreak of COVID-19, the Defendant hospitals

were especially affected as all areas of same were deluged with patients suffering

from COVID-19 in their emergency rooms, intensive care units and throughout all

other areas of their facilities.

44. Consequently, Defendants mandated that all their employees wear masks and other personal protection items stating the reason that doing so was the best way to minimize the spread of such disease.

45. Without employees such as the Plaintiffs working at Defendants' facilities and being directly exposed to the dire risk of contracting COVID-19, Defendants could not have operated and would have suffered dire financial ruin.

46. Plaintiffs, in reliance on Defendants' assurances that they and their families were protected by wearing masks, complied, continued to work and were all directly subjected to contracting COVID-19 at its zenith.

47. In August of 2021, Defendants announced a "Mandatory Vaccine Policy" which required all of their employees to have been injected by the COVID-19 vaccine or to have at least commenced a two (2) dose vaccine regimen by October 31, 2021.

48. In the event that any employee failed to strictly comply with Defendants' policy, the employee would be placed on a fourteen (14) day unpaid administrative leave until they complied and took the injections.

49. In the event that the employee failed to comply with injections by the end of the unpaid administrative period, Defendants unilaterally concluded that the employee voluntarily terminated their employment.

50. The Mandatory Vaccine Policy did have a provision for employees to apply for certain exemptions, including an Exemption due to an employee's sincerely held religious beliefs, by October 1, 2021

51. Under such policy, employees that applied for a religious exemption were not to be placed on administrative leave or deemed to have voluntarily terminated their employment pending determination of the exemption request.

52. None of the Plaintiffs ever voluntarily ended their employment with Defendants.

53. Upon information and belief, prior to the issuance of the policies and mandates set forth herein, BILH worked in co-operation with Johnson & Johnson, one of the manufacturers of the COVID-19 vaccines Defendants mandated upon the Plaintiffs and other manufacturers of the said vaccine, in the development of such vaccines including testing same for effectiveness.

54. Upon information and belief, BILH has direct knowledge that the Johnson & Johnson and other like vaccines are ineffective for their intended purpose and, including the intended purpose of the Vaccine Policy issued by the Defendants set forth herein and have specific direct knowledge that fully vaccinated people can still be infected with the COVID-19 virus and still spread said virus.

55. Upon information and belief, BILH has direct knowledge of potential risks, side effects and harm to the recipient of such vaccine that BILH did not disclose to Plaintiffs at or after subjecting the Plaintiffs to the Vaccine policy.

56. McEntee was a Staff Registered Nurse in the Emergency Department at BID-Plymouth for nearly five (5) months.

57. On or about September 9, 2021, McEntee submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her

Religious Exemption was denied, and she was wrongfully terminated by Defendants on November 26, 2021.

58. McEntee suffered the damages listed jointly with all Plaintiffs later herein and additionally states that Defendants actions caused her to lose her insurance which created severe financial stress to herself and her family.

59. Gearin was a Registered Nurse who worked in the Critical Care Unit at NHC for over thirteen (13) years.

60. On or about September 24, 2021, Gearin submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on November 26, 2021.

61. Carlson was a Staff Nurse who worked in the Critical Care Unit at NHC for over seven (7) years.

62. On or about September 27, 2021, Carlson submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on December 28, 2021.

63. Carlson suffered the damages listed jointly with all Plaintiffs later herein and additionally states that Defendants actions caused her physical medical ailments, impediment to her children's schooling and severe financial stress to herself and her family.

12

64. Provitola was a Registered Nurse who worked on a Medical Surgery- Telemetry Floor, at BID- Plymouth for over three (3) years.

65. On or about September 1, 2021, Provitola submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on January 12, 2022.

66. DiGirolamo was a Cardiac Echotechnologist who worked at BID- Plymouth for over ten (10) years.

67. On or about September 29, 2021, DiGirolamo submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on January 3, 2022.

68. DiGirolamo suffered damages listed jointly with all Plaintiffs later herein and additionally states that Defendants actions caused her to suffer physical medical ailments, a denial of unemployment benefits and severe financial stress to herself and her family.

69. Clarke was a Clinical Nurse II who worked at BIDMC for over twenty-six (26) years.

70. On or about October 1, 2021, Clarke submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her

13

Religious Exemption was denied, and she was wrongfully terminated by Defendants on January 31, 2022.

71. Arsenault was a Clinical Nurse II who worked at NHC for nearly three (3) years.

72. On or about September 30, 2021, Arsenault submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on December 28, 2021.

73. Barnes was a Certified Wound Nurse who worked at BID- Plymouth for close to six (6) years.

74. On or about September 30, 2021, Barnes submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on January 3, 2022.

75. Buzzanga was a Clinical Associate who worked at Winchester for over eight (8) months.

76. On or about September 29, 2021, Buzzanga submitted his Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by his employer. He was placed on an unpaid fourteen (14) day administrative leave, his Religious Exemption was denied, and he was wrongfully terminated by Defendants on November 28, 2021.

77. Ciulla was a Pharmacist who worked at NHC for over twenty-four (24) years.

14

78. On or about September 10, 2021, Ciulla submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on November 26, 2021.

79. Jasilewicz was a Registered Nurse who worked in the Emergency Department at NHC for over five (5) years.

80. In or about September of 2021, Jasilewicz submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was terminated by Defendants on November 26, 2021.

81. Mello was a Certified Wound Nurse who worked at BID- Plymouth for over (2) years.

82. On or about October 4, 2021, Mello submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on January 3, 2022.

83. Cardinale was an Occupational Therapist who worked at BILHPC for over five (5) years.

84. On or about September 27, 2021, Cardinale submitted her Religious Exemption. requesting to be exempt from the COVID-19 vaccine, which was mandated by her

employer. She was placed on an unpaid fourteen (14) day administrative leave, her

Religious Exemption was denied, and she was wrongfully terminated by

Defendants on January 11, 2022.

85. Cardinale suffered the damages listed jointly with all Plaintiffs later herein and

additionally states that Defendants actions caused severe financial stress to herself

and her family.

86. Cordy was a Patient Access Representative who worked at NHC for over fourteen

(14) years.

87. On or about September 23, 2021, Cordy submitted her Religious Exemption,

requesting to be exempt from the COVID-19 vaccine, which was mandated by her

employer. She was placed on an unpaid fourteen (14) day administrative leave, her

Religious Exemption was denied, and she was wrongfully terminated by

Defendants on December 29, 2021.

88. Cordy suffered the damages listed jointly with all Plaintiffs later herein and

additionally states that Defendants actions caused her to incur otherwise

unnecessary loans and severe financial stress to herself and her family.

89. Hetrick was a Unit Coordinator and a Cardiac Telemetry Technician who worked at

BIDMC for over nineteen (19) years.

90. On or about September 29, 2021, Hetrick submitted her Religious Exemption,

requesting to be exempt from the COVID-19 vaccine, which was mandated by her

employer. She was placed on an unpaid fourteen (14) day administrative leave, her

Religious Exemption was denied, and she was wrongfully terminated by

Defendants on November 27, 2021.

16

91. Momjian was an Office Coordinator and Supervisor who worked at Mount Auburn for over fourteen (14) years.

92. On or about September 29, 2021, Momjian submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on December 27, 2021.

93. Murphy was a Medical Assistant who worked at BILH- Pond Street for over nine (9) months.

94. On or about September 8, 2021, Murphy submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on November 18, 2021.

95. Soucia was a Managed Care Coordinator who worked at BIDMC for over two (2) years.

96. On or about September 22, 2021, Soucia submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on January 7, 2022.

97. Dela Cruz was a Registered Nurse who worked at Mount Auburn and was an RN for more than 19 years.

98. On or about September 29, 2021, Dela Cruz submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on December 10, 2021.

99. Dela Cruz suffered the damages listed jointly with all Plaintiffs later herein and additionally states that Defendants actions caused her physical medical ailments, a denial of unemployment benefits and severe financial stress to herself and her family.

100. Chandler was a Physical Therapist who worked at Northeast for approximately two (2) years.

101. On or about September 30, 2021, Chandler submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on November 5, 2021.

102. Dickens was a Registered Nurse who worked at BILHPC for nearly two (2) years.

103. On or about September 6, 2021, Dickens submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on November 15, 2021.

104. Letellier was a Registered Nurse who worked at Winchester Hospital from July 12, 2010 until her wrongful termination.

105. On or about September 27, 2021, Letellier submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on January 7, 2022.

106. O'Connor is a Registered Nurse who worked for the Defendant Winchester Hospital for more than 44 years before her wrongful termination.

107. On or about September 19, 2021, O'Connor submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on December 2, 2021.

108. Gromyko worked for BILH for a period of 6 years.

109. On or about September 3, 2021, Gromyko submitted her Medical Exemption and on October 18, 2021 submitted a Religious Exemption, both requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Exemption requests were denied, and she was wrongfully terminated by Defendants on April 11, 2022.

110. Lucas worked for BILH on a Medical Surgery- Telemetry Floor for over 23 years.

111. On or about September 11, 2021, Lucas submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on April 25, 2022.

112. Durette worked for BILH as a Radiotechnological Technologist for the Defendant BILH prior to being wrongfully terminated.

113. On or about September 17, 2021, Durette submitted her Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was wrongfully terminated by Defendants on February 3, 2022.

114. Each of the Plaintiffs requested accommodations from Defendants in the form of working from a remote location where possible, wearing a mask and periodic testing for COVID-19.

115. Defendants did not engage in any meaningful process to determine whether it could accommodate Plaintiffs' requests and simply denied Plaintiffs' requests indicating that Plaintiffs' requests created an undue hardship on Defendants while asserting that Plaintiffs' proposal were inferior to the vaccine in achieving the goals of the mandate. Defendants followed the denial with termination of the Plaintiffs.

116. Following an announcement by the Food and Drug Administration ("FDA") on August 2, 2021, claiming that vaccines were ninety-one percent (91%) effective in preventing COVID-19 (Pfizer), it became immediately clear that was not true.

117. Illustrating by example are the following list of visible persons that became

affected by COVID-19 despite having been injected by a COVID-19 vaccine along

with the date their infection was announced:

| | |
|---|---|
| 08-19-2021 | U.S. Senator John Hickenlooper |
| | U.S. Senator Angus King |
| | U.S. Senator Roger Wicker |
| 10-19-2021 | Dept Homeland Security Secretary Alejandro Mayorkas |
| 12-19-2021 | U.S. Senator Elizabeth Warren |
| 01-02-2022 | Dept of Justice Secretary Lloyd Austin |
| 03-13-2022 | U.S. President Barack Obama |
| 03-31-2022 | CIA Director William Burns |
| 04-05-2022 | U.S. Attorney General Merrrick Garland |
| 04-07-2022 | U.S. House Speaker Nancy Pelosi |
| 04-09-2022 | U.S. Dept of Agriculture Secretary Tim Vilsack |
| 04-26-2022 | U.S. Vice-President Kamala Harris |
| 05-04-2022 | U.S. Secretary of State Anthony Blinkin |
| 06-01-2022 | U.S. Labor Secretary Marty Walsh |
| 06-15-2022 | Dr. Anthony Fauci |
| 06-2022 | U.S. Senator Wicker for 3rd time (02-2022) |
| 07-10-2022 | U.S. Senate Majority Leader Charles Shumer |
| 07-21-2022 | U.S President Joseph Biden |
| 10-22-2022 | CDC Director Rochelle Walensky |

118. Public Health Officials now acknowledge the fallacy of claims of protection

afforded by vaccines against COVID-19.

   a.  Dr. Deborah Birx (Former White House Coronavirus Response Coordinator):

"I knew these vaccines were not going to protect against infection and I think we

overplayed the vaccines". https://youtu.be/8aYqTIg1A

   b.  Dr. Anthony Fauci:

"We know that people get infected and then get reinfected and people get

vaccinated, and they get infected. So, immunity isn't measured in decades or

lifetimes. It's measured in several months."

https://www.marketwatch.com/articles/Anthony-fauci-covid-19-biden-immunity-

51658437525?shtied=nf-rss

119. As of August 2020, the Center for Disease Control and Prevention ("CDC")

guidance on COVID-19 protection changed to eliminate differentiation based on

whether a person received vaccination and now concede that so-called COVID-19

vaccines do not prevent those injected with same from contracting, suffering and/or

spreading COVID-19.

120. The majority of persons now hospitalized for COVID-19 related issues have

received vaccinations and caught the COVID-19 virus anyway.

121. Defendants "Mandatory Vaccine Policy" was based on false and deceptive claims

that the vaccine was required to prevent them from contracting the virus and

spreading it to others.

122. Defendants terminated the Plaintiffs for resisting being injected and while refusing accommodations by use of masks and periodic testing claiming same to be inferior to the vaccine.

123. Historically, Defendants have lauded the effectiveness of masks and periodic testing in their policies and these measures were central to the rhetoric of Defendants to cause Plaintiffs to continue working through the pandemic in the face of exposure to themselves, their families, friends and contacts to this hideous virus.

124. Defendants' instant degradation of masks and periodic testing by labeling them as "inferior" and unacceptable accommodation, along with Defendants unrealistic reliance on experimental vaccines, place Defendants historical position in question and now expose serious liberties taken by Defendants with the lives and well-being of Plaintiffs' their families and contacts.

125. Each of the Plaintiffs suffered financially, emotionally, psychologically and lost reputation, as Defendants wrongly terminated them and claimed that Plaintiffs chose to voluntarily terminate their employment.

## CLAIMS FOR RELIEF

### COUNT I

### ASSAULT

126. Paragraphs 1-125 are referenced and incorporated into Count I.

127. The actions of the Defendants placed the Plaintiffs in fear and apprehension of imminent bodily harm.

## COUNT II

## VIOLATION OF PLAINTIFFS' EQUAL PROTECTION AND TREATMENT RIGHTS

128. Paragraphs 1-127 are referenced and incorporated into Count II.

129. The actions of the Defendants denied the Plaintiffs their rights to Equal Protection and equal treatment as guaranteed to them by the United States Constitution.

130. Pursuant to the Fourteenth Amendment to the United States Constitution, the Plaintiffs had a right to the equal protection and due process of laws.

131. The Plaintiffs had a right to be treated equally as their co-workers who elected to receive the COVID-19 vaccine.

132. The Plaintiffs were treated differently than other employees who opted to receive the COVID-19 vaccine because their sincerely held religious beliefs were not accommodated, they were placed on an un-paid administrative leave, and they were ultimately let go from their employment.

## COUNT III

## VIOLATION OF PLAINTIFFS' SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS

133. Paragraphs 1-132 are referenced and incorporated into Count III.

134. The actions of the Defendants denied the Plaintiffs their rights to Due Process of Law as guaranteed to them by the United States Constitution.

135. Plaintiffs have the right and protected interest under the First, Fourth and Fourteenth Amendment to the United States Constitution and Articles IV, X, XX, XXI, XXIX, and XXX of the Massachusetts Declaration of Rights to be free from the invasion of bodily integrity and to be free from unwanted medical intervention.

136. Because of these rights enjoyed by the Plaintiffs directly under both the United States Constitution and the Massachusetts Declaration of Rights as mentioned above, their substantive due process rights were denied when the Defendants mandated the COVID-19 vaccine upon the Plaintiffs, refused to honor their sincerely held religious beliefs and failed to grant their Religious Exemption from said vaccine wrongfully terminating them from their employment in retaliation.

137. Because of the Defendants' action and inactions as aforementioned, the Plaintiffs' procedural due process rights were denied and violated.

## COUNT IV

## VIOLATION OF M.G.L. CHAPTER 151 AND VIOLATION OF TITLE VII

138. Paragraphs 1-137 are referenced and incorporated into Count IV.

139. At all relevant times, Plaintiffs were engaged in protected activity under M.G.L. c. 151 and Title VII, upon which they suffered adverse employment action connected to such protected activity.

140. Defendants constructively terminated Plaintiffs' employment, which was motivated by retaliatory animus.

141. Defendants engaged in unlawful acts of subterfuge with specific intent to deprive the Plaintiffs.

## RELIEF

WHEREFORE, the Plaintiffs pray that this Honorable Court grant:

A.    A declaration that Plaintiffs' constitutional rights were violated and an order requiring just, proper and equitable relief.

B.    A finding for Plaintiffs for each claim and Count set forth herein and an order for an amount to be determined at the trial of this matter.

25

C.    Compensatory damages in the amount of Two Million Dollars ($2,000,000.00") for each Plaintiff.

D.    Punitive damages in the amount of One Million Dollars ("$1,000,000.00") for each Plaintiff.

E.    Award reasonable attorneys' fees and costs of this action to the Plaintiffs.

F.    Such other and further relief that to the Court seems just, proper, and equitable.

PLAINTIFF'S DEMAND A TRIAL BY JURY ON ALL ISSUES AND COUNTS.

Respectfully submitted,
The Plaintiffs,
By their attorneys,

DATED: February 2, 2023

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
Email: Richard@chamberslawoffice.com

DATED: February 2, 2023

*/s/ Joseph Spinale., Esq.*
Joseph Spinale, Esq.
BBO#: 548547
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 838-1411
Fax: (781) 581-8449
Email: Joe@chamberslawoffice.com