UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA McENTEE, CHRISTINE
GEARIN, JULIA CARLSON, MICHELLE
PROVITOLA, JULIE DiGIROLAMO,
DOROTHY CLARKE, JEANNE
ARSENAULT, STACEY BARNES,
MARCO BUZZANGA, DONNA CIULLA,
JENNIFER JASILEWICZ, LAUREN
MELLO, ERIKA CARDINALE,
JENNIFER CORDY, LAUREN
HETRICK, MARIAM MOMJIAN,
PATRICIA MURPHY, RACHAEL
SOUCIA, FELICIA DELA CRUZ,
ANGELA CHANDLER, MARY
DICKENS, DESIREE LETELLIER,
MARY O'CONNOR, BROOKE
GROMYKO, MIRLENE LUCAS, AMY
DURETTE,

      Plaintiffs,

      v.

BETH ISRAEL LAHEY HEALTH, INC.,
BETH ISRAEL DEACONESS
HOSPITAL- PLYMOUTH, INC.
NORTHEAST HOSPITAL
CORPORATION.
BETH ISRAEL DEACONESS MEDICAL
CENTER, INC.;
WINCHESTER HOSPITAL.
BETH ISRAEL LAHEY HEALTH
PRIMARY CARE, INC.,
MOUNT AUBURN HOSPITAL;
NORTHEAST PROFESSIONAL
REGISTRY OF NURSES, INC.

      Defendants.

Civil Action No.: 1:22-cv-11952-DLC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## STANDARD OF REVIEW

All of the above-named Defendants (hereinafter, the "Defendants") have moved, pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 7.1(b)(1) to dismiss Counts I through III of the Plaintiffs' First Amended Complaint. All of the above-named Plaintiffs, (hereinafter, the "Plaintiff") oppose Defendants' Motion to Dismiss and submits it must be denied in its entirety.

When deciding a motion to dismiss under Rule 12(b)(6), a court must "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Tomasella v. Nestle USA, Inc.,* 962 F.3d 60, 70 (1st Cir. 2020).

"A judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

"A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"As a general rule, a court freely grants leave to amend a complaint that has been dismissed. <u>Fed. R. Civ. P. 15(a)</u>; *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, <u>806 F.2d</u>

1393, 1401 (9th Cir. 1986)." *Forbes v. Cnty. of San Diego*, Case No. 20-cv-00998-BAS-JLB, 4

(S.D. Cal. Mar. 4, 2021).

## ARGUMENT

Defendants have moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure for failure to state a claim. Defendants ask the Court to dismiss Counts I-III.

Defendants assert that Count I fails to state a claim for civil assault for several reasons.

*Defendants Motion to Dismiss*, p. 2. Second, Defendants claim that they are not bound to honor

Plaintiffs' constitutional rights because they are a private entity and that they were not acting

under color of law in "adopting their COVID-19 vaccine policy", which, in effect, would make

them state actors. *Id.*

The Defendants' Motion lacks merit and must be denied.

## 1.   Defendants are State Actors for the Purpose of Constitutional Violations.

The Defendants entire argument relative to dismissal of Counts II and III is based on their

assertion that Plaintiffs are making "two freestanding constitutional claims". *Defendants'*

*Memorandum of Law in Support of Motion to Dismiss*, p. 11.

The Plaintiffs are not making freestanding constitutional claims against private entities

but are making constitutional claims against the agents of state actors.

The crux of this action is based on the Defendants' policy to mandate that Plaintiffs get

injected with the Covid-19 vaccine. The Defendants did not originate this mandate but were

**ordered** to create the policy per a mandate of the Federal Government. Thus, Defendants were

carrying out a policy that originated from a state actor and which they were mandated to enforce.

The Center for Medicare and Medicaid Services (hereinafter, "CMS") mandated hospitals

receiving Medicare and Medicaid funds to promulgate and enforce policies requiring their

employees to be injected with the Covid-19 vaccine. *See*, CMS 3514-IFC. Defendants created the policy in question in this case because they were ordered to do so by the Federal Government. Defendants are state actors because they are acting as agents for the state. In fact, the Defendants admitted in a "position statement" before the Equal Employment Opportunity Commission (hereinafter, the "EEOC") that they enacted their vaccine mandate policy because they were ordered to do so by the above CMS order. *See*, May 10, 2022 Position Statement by Defendants to the EEOC. Defendants receive Medicare and Medicaid funds and therefore are mandated to follow the policy of CMS.

Moreover, whether an entity is properly considered a state actor under Supreme Court caselaw is factually dependent. This Motion must be rejected until the parties have had an opportunity to engage in discovery.

Under the doctrine of state action, courts may, under certain circumstances, treat "the deed of an ostensibly private organization or individual" as if it were performed by the Federal government or a state government. *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001). "State action may be found if, ... there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 (1974)). State action may also be found under the public function test or the state compulsion test. *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992). Under any and all of these tests, Defendants were a state actor for purposes of constitutional torts. "[T]he public function test shows state action only when private actors are given powers (or perform functions) that are traditionally the exclusive prerogative of the State." *Id.* at 1131 (quotation marks omitted).

State action may exist when the government "has exercised coercive power or has

provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Private entities and individuals may be state actors when they act as "a willful participant in joint activity with the State or its agents," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)) (internal quotation marks omitted). Private entities and individuals may also be state actors when they "[have] been delegated a public function by the state." *Brentwood Acad.*, 531 U.S. at 296 (citations omitted). Additionally, "[c]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Evans v. Newton*, 382 U.S. 296, 299 (1966).

The United States Congress did not pass a statute requiring citizens to receive Covid-19 vaccines for the simple reasons that it lacked both the political will and the constitutional authority. Nonetheless, the Executive Branch of the Federal government coerced Defendants into implementing its vaccine mandate. Exec. Order No. 14042 expressed the desire of the President and the Executive Branch to require citizens to be vaccinated while, at the same time, acknowledging that neither they, nor Congress, had the authority to mandate this medical procedure. The Federal government attempted to implement a broad-reaching vaccine mandate under its authority to regulate occupational health and safety. However, the Fifth Circuit Court of Appeals issued a decision that declared that the Federal Government lacked authority under the Occupational Safety and Health Act. *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Labor,* 17 F.4th 604, 617 (5th Cir. 2021); 29 U.S.C. § 651 *et seq.* This view was affirmed by the Supreme Court before Exec. Order 14042 became effective. *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.,* 142 S. Ct. 661,

665–66 (2022).

Instead of complying with the limitations imposed by the United States Constitution, the President and the Executive branch of the United States government attempted a work-around by creating a "sword of Damocles" for a large sector of the citizenry: Either get vaccinated or suffer the extreme financial consequences of losing your job. Defendants were one of the authors of this work-around. As a result, it voluntarily and intentionally decided to lead the way and impose a vaccine mandate in an attempt to garner the support and favor of the Executive branch of the United States government, from whom it derives substantial funding.

Defendants receive so much of its funding from the Federal government, it is completely beholden to the Federal government. Defendants' conduct was so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon governmental action. Defendants were a willful participant in joint activity with the Federal government, in that it deliberately aided the Federal government in its efforts to influence Americans to receive Covid-19 vaccination by threatening their employment. *See*, Exec. Order No. 14043, 86 Fed. Reg. 50989 (executive order mandating vaccination for federal employees, issued simultaneously to Exec. Order No. 14042).

Defendants have also violated Plaintiffs' constitutional rights under the religion clause of the Constitution. Defendants violated Plaintiffs' right to freedom of expression protected by the First Amendment by terminating Plaintiffs because of their voiced opposition to the vaccine mandate. It is readily apparent that the Defendants acted as an arm of the government.

The Free Exercise Clause of the First Amendment of the United States Constitution applies when government action "discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi*

6

*Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 532 (1993) (citations omitted). Under the Free Exercise Clause, "if the object of a law is to infringe upon or restrict practices because of their religious motivation, … it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* at 533 (citations omitted). "Official action that targets religious conduct for distinctive treatment cannot be shielded by … facial neutrality," as "[t]he Free Exercise Clause protects against governmental hostility which is masked, as well as overt." *Id.* at 534.

Here, Defendants' vaccine mandate violated the Free Exercise Clause. Serving as an actor for the Federal Government, Defendants purposefully enacted their vaccine mandate to infringe upon or restrict the practices of its employees who objected to receiving the vaccine because of their religious beliefs.

Defendants' company-wide vaccine mandate was not justified by a compelling interest and Defendants also failed to narrowly tailor its implementation of a vaccine mandate by ignoring the natural immunity of many of the Plaintiffs. Clearly, those Plaintiffs were at least as unlikely to spread Covid-19 as individuals who consented to being vaccinated. At the time it terminated Plaintiffs, and thereafter, Defendants had no scientific evidence that employees with natural immunity were more likely to spread Covid-19 than employees who had been vaccinated. Defendants were aware that many scientists and the European Union acknowledged the obvious impact of natural immunity.

Defendants were aware, or should have been aware, at the time it terminated Plaintiffs, that definitive scientific evidence was lacking that the vaccines prevent the spread of Covid-19. Rather, the scientific evidence establishes, at best, that the vaccines lessen the symptoms of Covid-19 and reduce the number of hospitalizations. To the extent that Defendants may have

considered the "public health risk" posed by unvaccinated individuals, Defendants were not entitled, in the face of religious opposition to the vaccines, to override an individual's choice to risk the possibility of worse symptoms, death, and hospitalization for themselves, especially since there was no scientific evidence that the vaccine prevented the spread of the disease or the severity of the disease in others.

Pursuant to 42 U.S.C. § 2000bb-1(a), "[i]n general Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b)". The Religious Freedom Restoration Act ("RFRA") applies to Defendants as an actor for the federal government. 42 U.S.C. § 2000bb-2(1). Pursuant to 42 U.S.C. § 2000bb-1(b), "Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

BILH's mandate violates the Fourteenth Amendment to the United States Constitution, which includes clearly established fundamental rights and liberty interests of personal autonomy and bodily integrity. *See*, e.g., *Griswold v. Connecticut*, 381 U.S. 479 (1965); *Roe v. Wade*, 410 U.S. 113 (1973) (reversed on other grounds); *Planned Parenthood v. Casey*, 505 U.S. 833 (1992); *Rochin v. California*, 342 U.S. 165 (1952); *Obergefell v. Hodges*, 576 U.S. 644 (2015); and the right to reject medical treatment, *Cruzan v. Director, Missouri Dep't Health*, 497 U.S. 261 (1990) and *Riggins v. Nevada*, 504 U.S. 127 (1992).

In modern jurisprudence, burdens upon fundamental rights require strict scrutiny. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). As mandated vaccinations are a substantial burden, Defendants must prove narrow tailoring to a compelling interest that justifies mandatory

8

vaccinations. While the government may have a general interest in mitigating Covid-19, the following problems reveal no narrow tailoring to any compelling interest exists. Naturally acquired immunity from Covid-19 is as robust as vaccine-acquired immunity, so there is no compelling interest (nor any rational basis) in vaccinating or requiring the vaccination of those who have already had Covid-19.

Furthermore, even absent the fundamental rights at issue, the Defendants' mandate also violates the Fourteenth Amendment under modern rational basis scrutiny, since the mandate is unreasonable and has no real or substantial relationship towards protecting the public health, particularly as applied to those with robust natural immunity. The arms of the government may not irrationally single out one class of individuals for discriminatory treatment. The mandate irrationally singles out the convalescent and discriminates against them.

In deciding whether Substantive Due Process rights have been violated, a court must determine "that a person has a 'liberty interest' under the Due Process Clause." *Cruzan by Cruzan v. Dir. Missouri Dept. of Health*, 497 U.S. 261, 279 (1990).

When there exists a liberty interest, "whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests." *Id.* (citing *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982)). The Due Process Clause "forbids the government to infringe ... 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest". *Glucksberg*, 521 U.S. 702, 721 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

It is well-established that there exists a "constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan*, 497 U.S. at 278; *see also,* e.g., *Jacobson v. Massachusetts*, 197 U.S. 11, 24-30 (1905) (recognizing this liberty interest in the context of a

smallpox vaccine); *Washington v. Harper*, 494 U.S. 210, 221-222 (1990) (recognizing the liberty interest of a prisoner in refusing involuntary administration of antipsychotic medication). Courts have also recognized a constitutionally protected liberty interest in freedom from bodily restraint. *See,* e.g., *Youngberg*, 457 U.S. at 316.

It is also well-established that "the government may not deny a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (citations and quotations marks omitted). The Unconstitutional Conditions Doctrine forbids "the government from coercing people into giving [ ] up" "the Constitution's enumerated rights." *Id.* (in the context of the Takings Clause of the Fifth Amendment); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (in the context of freedom of speech under the First Amendment); *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 269 (1974) (in the context of the right to travel under the Fourteenth Amendment).

Defendants violated the Unconstitutional Conditions Doctrine (*Koontz,* 570 U.S. 595 at 604) through its vaccine mandate. Defendants forced Plaintiffs to choose between their employment and their constitutionally protected interest in refusing medical treatment and maintaining bodily integrity.

At the time of Plaintiffs' terminations, there were no vaccines being administered in the United States that were fully approved by the United States Food and Drug Administration (hereinafter, the "FDA"). Rather, the FDA issued Emergency Use Authorizations for several vaccines.

Moreover, all of the Plaintiffs in this case opposed Defendants' decision to impose a vaccine mandate without exempting those who claimed religious or medical reasons for opposing the vaccine mandate. Plaintiffs expressed their opposition to Defendants' vaccine

mandate and articulated the contention that it violated their religious freedoms and/or that they were entitled to a medical exemption. Prior to terminating Plaintiffs, Defendants were aware of Plaintiffs' opposition to the vaccine mandate and Plaintiffs' contentions regarding religious and disability discrimination.

Defendants retaliated against Plaintiffs by terminating Plaintiffs because they expressed their opposition to the vaccine mandate and because they opposed imposition of such a mandate based on religious and disability discrimination arguments and contending that it violated Title VII.

## 2.   **Defendants are Liable for Civil Assault.**

The Commonwealth defines assault in two ways: "either by an attempted battery, or by putting another in fear of any immediately threatened battery." *Commonwealth v. Gorassi*, 432 Mass. 244, 247 (2000). "'The intent required [for civil assault] is the intent to make the victim apprehensive of immediate physical harm." *Commonwealth v. Musgrave*, 38 Mass.App.Ct. 519, 523-524 (1995). That is as far as civil assault elements go, not to the lengths proffered by the Defendants in their memorandum.

The question in this case of whether the Defendants' actions of trying to force Plaintiffs to be vaccinated under the penalty of losing their jobs if they did not, and whether those actions made the Plaintiffs "apprehensive of immediate physical harm" is a factual determination to be made by a trier of facts, not by a court in pre-trial Motion to Dismiss[1]. As Defendants have pointed out, Paragraph 127 of the Amended Complaint alleges Plaintiffs were in fear of "imminent bodily harm". Neither the Defendants nor the Court can hold at this particular

---

[1] Of course, the threat of physical harm in this case was sticking a syringe into Plaintiffs' arms, likened to battery, and injecting an unknown substance into their body, the safety of which is as yet still unknown.

juncture of the pleadings that this fear was not real or does not qualify under the interpretation of civil assault.

## CONCLUSION

WHEREFORE, based upon the foregoing reasons, the Plaintiffs respectfully submit that the Defendants' Motion to Dismiss Failed to meet Local R. Civ. P. 7.1(b)(4)'s requirements and is therefore defective, and thus should be summarily denied.

Should this Court conclude that Local R. Civ. P. 7.1(b)(4)'s requirements were fulfilled, then the Plaintiffs submit they have raised extensive significant factual disputes which necessitate denial of the Defendant's motion.

If, however, this Court concludes the Plaintiffs did not raise significant factual disputes, then the matters the Defendants raised that were "outside the pleadings" must either be excluded, or the Defendants' motion must be treated as one for summary judgment under Rule 56. If, however, this Court concludes no matters "outside the pleadings" were raised by the Defendants, then the Defendants' motion should be otherwise denied.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), the undersigned counsel hereby certifies that counsel for the Plaintiffs has conferred with counsel for the Defendants and attempted in good faith to resolve or narrow the issues presented in this motion.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiffs believe that oral argument may assist this Honorable Court in deciding this motion and thus request oral argument.

## REQUEST TO AMEND THE COMPLAINT

The Plaintiffs respectfully include in their Opposition to the Defendants' Motion to

Dismiss a request that should this Court allow the instant Motion to Dismiss because of alleged

deficiencies in the Complaint, that the Plaintiffs be given leave to amend.

Respectfully submitted,
The Plaintiffs,
By their attorneys,

DATED: May 25, 2023

*/s/ Richard C. Chambers, Jr., Esq.*
Richard C. Chambers, Jr., Esq.
BBO#: 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
Email: Richard@chamberslawoffice.com

DATED: May 25, 2023

*/s/ Joseph Spinale., Esq.*
Joseph Spinale, Esq.
BBO#: 548547
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA 01940
Office: (781) 581-2031
Cell: (781) 838-1411
Fax: (781) 581-8449
Email: Joe@chamberslawoffice.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

DATED: May 25, 2023

/s/ Richard C. Chambers, Jr., Esq.

Richard C. Chambers, Jr., Esq.