UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA MCENTEE, CHRISTINE GEARIN, JULIA CARLSON, MICHELLE PROVITOLA, JULIE DIGIROLAMO, DOROTHY CLARKE, JEANNE ARSENAULT, STACEY BARNES, MARCO BUZZANGA, DONNA CIULLA, JENNIFER JASILEWICZ, LAUREN MELLO, ERIKA CARDINALE, JENNIFER CORDY, LAUREN HETRICK, MARIAM MOMJIAN, PATRICIA MURPHY, RACHAEL SOUCIA, FELICIA DELA CRUZ, ANGELA CHANDLER, MARY DICKENS, DESIREE LETELLIER, MARY O'CONNOR, BROOKE GROMYKO, MIRLENE LUCAS, AND AMY DURETTE,<br>*Plaintiffs*,<br>v.<br>BETH ISRAEL LAHEY HEALTH, INC., BETH ISRAEL DEACONESS HOSPITAL – PLYMOUTH, INC., NORTHEAST HOSPITAL CORPORATION, BETH ISRAEL DEACONESS MEDICAL CENTER, INC., WINCHESTER HOSPITAL, BETH ISRAEL LAHEY HEALTH PRIMARY CARE, INC., MOUNT AUBURN HOSPITAL, and NORTHEAST PROFESSIONAL REGISTRY OF NURSES, INC.,<br>*Defendants*. | C.A. No. 1:22-cv-11952<br>***Actions consolidated pursuant to Electronic Order dated September 15, 2023 (ECF No. 35)*** |
| LEANNA DEMARCO, GABRIELLA HOWARD, and ALITA MULVEY,<br>*Plaintiffs*,<br>v.<br>BETH ISRAEL LAHEY HEALTH, INC., NORTHEAST HOSPITAL CORPORATION, and BETH ISRAEL DEACONESS MEDICAL CENTER, INC.,<br>*Defendants*. | Civil Action No. 1:23-cv-10974<br>***Actions consolidated pursuant to Electronic Order dated September 15, 2023 (ECF No. 12)*** |

**DECLARATION OF MATT RABESA**
**IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, Matt Rabesa, under penalty of perjury, hereby depose and state as follows:

1. I am the Senior Vice President, HR Operations of Beth Israel Lahey Health, Inc. ("BILH").

2. I submit this affidavit in support of Defendants' Motion for Summary Judgment. The facts set forth herein are true and correct and based upon my personal knowledge and based on a review of relevant business records.

3. I have held the position of Senior Vice President, HR Operations at BILH since October 2022. From October 2021 to October 2022, I was the Vice President of Employee Health and HR Service Center for BILH. From October 2020 to October 2021, I was the Executive Director of Employee Health for BILH.

4. In the roles I have held at BILH, among other things, I was responsible for the oversight of the Employee Health departments of BILH's affiliated hospitals, including Beth Israel Deaconess Medical Center, Inc. ("BIDMC"), Beth Israel Deaconess Hospital – Plymouth, Inc. ("BID-Plymouth"), Northeast Hospital Corporation ("NHC"), Winchester Hospital, Beth Israel Lahey Health Primary Care, Inc. ("BILHPC"), Mount Auburn Hospital ("Mount Auburn"), and Northeast Professional Registry of Nurses ("NPRN") (collectively with BILH, the "Defendants"). The duties of these roles include oversight of pre-employment screening, workers' compensation, disability accommodations, return to work, drug testing, and mandatory vaccination of employees.

5. BILH is the second largest healthcare system in Massachusetts and is a public health leader in the Commonwealth. In October 2021, BILH was comprised of 19 affiliates across the health care continuum with more than 40,000 workforce members consisting of physicians, nurses, allied health professionals, and other workforce members (collectively,

"Workforce Members") who collectively provided safe, quality care in hospitals, labs, physician's offices, outpatient centers, rehab facilities, urgent care clinics, and homes.

6. BIDMC is a non-profit teaching hospital located in Boston, Massachusetts. BIDMC provides a comprehensive range of inpatient, clinical, and diagnostic services in more than 100 specialties and subspecialties. BIDMC has a workforce of over 10,000 employees, has close to 700 patient beds, and treats hundreds or thousands of patients every day in inpatient and outpatient settings.

7. BID-Plymouth is a 170-bed acute care non-profit hospital serving more than 250,000 residents in Plymouth and Barnstable counties. BID-Plymouth provides a comprehensive range of care including emergency medicine, surgery, maternity, and oncology and is a key healthcare provider for the South Shore and Cape Cod regions of Massachusetts.

8. NHC is a non-profit network encompassing Beverly Hospital, Addison Gilbert Hospital, and BayRidge Hospital. Beverly Hospital is an acute care facility in Beverly, Massachusetts with specialties in maternal-newborn health, cardiovascular services, orthopedics, and general surgical services. Addison Gilbert Hospital is an acute care facility in Gloucester, Massachusetts with specialties in emergency medicine, adult inpatient care, oncology services, and ambulatory services. BayRidge Hospital is an inpatient psychiatric care facility in Lynn, Massachusetts with specialties in high-quality mental health care, substance use disorder treatment, and partial-hospitalization and outpatient services. Together, NHC operates over 500 beds in and around the North Shore of Massachusetts.

9. Winchester Hospital is a non-profit community hospital that provides a comprehensive range of healthcare services in northwest suburban Boston, Massachusetts

including surgical specialties, pediatrics, cardiology, pulmonary medicine, oncology, and gastroenterology. Winchester Hospital operates 183 beds and serves eleven communities.

10. BILHPC is a non-profit organization of primary care practices with a network of over 35 sites located in and around greater Boston, its western suburbs, the South Shore, and eastern Massachusetts. Each BILHPC practice site is staffed with physicians and/or advanced practitioners, nurses, medical assistants, practice coordinators, and/or practice managers and administrative support staff who provide multidisciplinary care for patients throughout the lifecycle.

11. Mount Auburn is a 217-bed non-profit teaching hospital in Cambridge, Massachusetts. Mount Auburn provides comprehensive inpatient services in all medical specialties, and is known for excellence in maternal health, cardiac care, and cancer care.

12. NPRN is a non-profit home health and hospice care agency. NPRN provides skilled nursing, clinical management, physical, occupational, and speech therapy, and home health aide services to patients in the northern Boston suburbs.

13. BILH's member institutions, including Defendants BIDMC, BID-Plymouth, NHC, Winchester Hospital, BILHPC, Mount Auburn, and NPRN, were on the frontlines of the COVID-19 pandemic and treated thousands of patients for COVID-19 from January 31, 2020, through July 26, 2022. Many of the patients Defendants treated were from vulnerable populations who were uninsured or insured through Medicaid.

14. On August 10, 2021, Defendants announced that COVID-19 and influenza vaccines would be required for all employees by October 31, 2021 (the "Vaccination Requirement"). Exhibit 70 to the Appendix to Defendants' Motion for Summary Judgment (the "Appendix") is a true and correct copy of BILH's August 10, 2021 email announcing the

Vaccination Requirement. I was involved in the decision to implement the Vaccination Requirement.

15. Defendants' decision to adopt the Vaccination Requirement was reached after considerable deliberation among senior leadership and was informed by the medical evidence demonstrating that vaccination was the most effective way to minimize the spread of COVID-19 and the flu, regional and national trends in the COVID-19 pandemic, and recommendations from healthcare experts externally and within BILH, including internal medical leadership and infectious disease experts within BILH.

16. Defendants' decision to adopt the Vaccination Requirement was based on BILH's experience as healthcare providers and the latest public health guidance from federal and state public health authorities, including the Centers for Disease Control and Prevention's ("CDC") recommendation that vaccination was the best way to protect against severe illness, hospitalization, and death, and to reduce the transmission of COVID-19 and the flu.

17. In adopting the Vaccination Requirement, Defendants relied upon the CDC's recommendation for healthcare workers that "[a]ll healthcare personnel . . . get vaccinated against COVID-19" because they may be "at increased risk of infection" due to their work "providing critical care to those who are or might be infected." Exhibit 71 to the Appendix is a true and correct copy of the foregoing recommendation, entitled "COVID-19 Vaccines for Healthcare Personnel," dated May 27, 2021, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/hcp.html [https://perma.cc/DH2AA7L7].

18. In adopting the Vaccination Requirement, Defendants relied upon the CDC's reports that "the vaccines reduce the risk of COVID-19, especially severe illness, among people who are fully vaccinated," offer "protection against symptoms," and "also help avoid people

get[ting] infected with the virus that causes COVID-19." Exhibit 72 to the Appendix is a true and correct copy of the foregoing reports, entitled "COVID-19 Vaccine Effectiveness," last updated August 16, 2021, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/how-they-work.html [https://perma.cc/AJ88-7NGA].

19. In adopting the Vaccination Requirement, Defendants relied upon the CDC's advisement that "COVID-19 vaccination can reduce the spread of the disease overall." Exhibit 73, to the Appendix is a true and correct copy of the foregoing advisement, titled "COVID-19 Vaccines Works," dated May 20, 2021, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/P9HYUR6L].

20. In adopting the Vaccination Requirement, Defendants relied upon a leading academic study posted on the CDC's website that reported, based on preliminary findings in healthcare providers at 33 sites across 25 states, that the "[e]ffectiveness of a complete 2-dose regimen of [the Pfizer or Moderna] vaccines was estimated to be 94%." Exhibit 74 to the Appendix is a true and correct copy of the study posted on the CDC's website, Tamara Pfilishvili et al., Interim Estimates of Vaccine Effectiveness of Pfizer-BioNtech and Moderna COVID-19 Vaccines Among Health Care Personnel – 33 U.S. Sites, January-March 2021, 70 Morbidity and Mortality Weekly Report 753, 753 (May 21, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/pdfs/mm7020e2-h.pdf [https://perma.cc/N5PG-FAJ3].

21. Defendants determined that the Vaccination Requirement was essential to providing the safest environment possible for its patients, employees, and communities.

22. In adopting the Vaccination Requirement, Defendants determined that while masking, social distancing, and testing had been useful tools in combatting the spread of COVID-19, these measures were less effective than vaccination and thus, insufficient to meet

Defendants' goal as a leader in the healthcare industry to limit the spread of COVID-19 and to create the safest possible environment for patients, staff, and the communities served by Defendants.

23. Defendants' decision to adopt the Vaccination Requirement was also based on the healthcare community standards within the Commonwealth at the time, as evidenced by the fact that other healthcare leaders also adopted mandatory COVID-19 and/or influenza vaccine requirements on or around the same time that Defendants adopted the Vaccination Requirement, including Mass General Brigham, Boston Children's Hospital, and Dana-Farber Cancer Hospital.

24. An important consideration for Defendants' decision to implement the Vaccination Requirement was public and patient trust in the safety of Defendants' facilities and public trust in Defendants as a healthcare leader.

25. On October 5, 2021, Defendants adopted a mandatory vaccination policy to implement the Vaccination Requirement ("the Policy"). I was involved in the adoption of the Policy. Exhibit 75 to the Appendix to Defendants' Motion for Summary Judgment (the "Appendix") is a true and correct copy of the Policy.

26. Several months after announcing the Vaccination Requirement, Defendants announced that employees must receive a booster shot as part of the Vaccination Requirement (the "Booster Requirement"). I was involved in the adoption of the Booster Requirement.

27. Defendants made the decision to adopt the Booster Requirement after a new and more contagious COVID-19 variant emerged (Omicron) and to curb the spread of COVID-19 and protect the health and safety of patients and employees.

28. Defendants' decision to adopt the Booster Requirement was based on Defendants' own experience and infectious disease experts confirming that boosters provided the best level of protection against Omicron.

29. Defendants developed a new process for the submission and review of employee requests for religious exemptions from the Vaccination and Booster Requirements.

30. Defendants reviewed all requests for religious exemptions from the Vaccination and Booster Requirements on a case-by-case basis.

31. Pursuant to the Policy, requests for religious exemption were required to be submitted on a form (the "Religious Exemption Form") to the human resources department. Exhibit 77 to the Appendix is a true and correct copy of the Religious Exemption Form.

32. Defendants considered letters or documents that accompanied Religious Exemption Forms and/or additional or supplemental submissions that supported employees' requests for a religious exemption.

33. BILH adopted a guiding memorandum ("Guiding Memorandum") setting forth the process and criteria for review of religious exemption requests. Exhibit 76 to the Appendix is a true and correct copy of the Guiding Memorandum.

34. After the initial review and follow up with employees for additional or clarifying information, two committees reviewed religious exemptions request to determine (1) whether the exemption request credibly set forth a sincerely held religious belief that conflicts with the Vaccination and Booster Requirements, and (2) whether the organization could accommodate the religious exemption request without undue hardship.

35. The first committee (the "Preliminary Review Committee") made a preliminary determination regarding whether requests credibly set forth a sincerely held religious belief that

conflicted with the vaccination requirement and whether accommodating the requests would pose an undue hardship.

36. The Preliminary Review Committee's recommendations went to a second committee (the "BILH Review Committee") (both committees collectively referred to as the "Review Committees"), which was comprised of members of the senior executive leadership team.

37. The BILH Review Committee made final determinations on requested religious exemptions.

38. In reviewing whether a religious exemption request credibly set forth a sincerely held religious belief that conflicted with the vaccination requirement, the Review Committees did not question the legitimacy of any particular religion or religious beliefs.

39. The Review Committees focused on the credibility of the requestor's sincerity in the stated religious belief, whether or not it was truly religious in nature (as opposed to secular or philosophical beliefs).

40. Defendants determined that a religious accommodation would pose an undue hardship on the organization where the essential functions of the requestor's position required regular in-person attendance and involved direct contact with patients and/or other Workforce Members because their unvaccinated status created higher and unacceptable health and safety risks for patients, employees, and the community.

41. Defendants determined that allowing employees to work unvaccinated would undermine public trust in Defendants as healthcare leaders and in the safety of their facilities and presented unworkable operational burdens to implement alternatives to vaccination.

42. Defendants made the above determinations based on numerous health, safety, and operational factors such as:

- More than 600 Workforce Members submitted requests for religious exemptions from the COVID-19 and/or influenza vaccine requirement.
- The public risk of transmission and health risks posed by COVID-19 and influenza is high.
- These risks are high for patients, especially vulnerable patients, such as unvaccinated patients or immunocompromised patients.
- These risks are high for healthcare workers who work in direct care, congregate, and other healthcare settings.
- These risks are high for Workforce Members who have direct contact with other Workforce Members, even if not caring for patients or working in direct care or congregate settings.
- The medical evidence demonstrates that vaccination is safe (in the absence of a medical contraindication) and is the most effective way to prevent the transmission of COVID-19 and influenza.
- As a leader in the healthcare industry, BILH is committed to limiting the spread of COVID-19 and influenza to the fullest extent possible.
- BILH believes it is necessary to achieve the safest possible environment for its patients and Workforce Members.
- Federal and state regulatory agencies require and/or strongly encourage employee vaccination for COVID-19 and influenza.
- Alternative infection control measures, such as masking, testing, and social distancing, are less effective than vaccination at preventing the transmission of COVID-19 and influenza.
- Where vaccination is widely available and the most effective way to prevent the transmission of COVID-19 and influenza, BILH considers less effective alternative infection control measures insufficient to provide the safest possible environment for its patients, Workforce Members, and the community, and minimize the spread of COVID-19 and influenza to the full extent possible.
- Accordingly, accommodating religious exemption requests from the vaccination requirements for Workforce Members whose jobs require regular in-person attendance and involve direct contact with patients and/or other staff members presents a higher and unacceptable health and safety risk for BILH's patients,

staff, and community. This determination factors in the volume of religious exemption requests received by BILH.

- The cost and operational burden of implementing alternative infection control measures in a potentially effective way for hundreds of employees is burdensome and unworkable, and, as described above, such measures would be less effective than vaccination in any event.

- It would also be unworkable to implement workarounds to ensure that hundreds of Workforce Members do not have direct contact with patients (or certain vulnerable patients) and other Workforce Members where their jobs require such direct contact. And such measures would be less effective than vaccination in any event.

I declare under the penalties of perjury on this 19th day of October 2026 that the foregoing is correct and true.

/s/ Matt Rabesa

Matt Rabesa
Senior Vice President, HR Operations
Beth Israel Lahey Health, Inc.

**CERTIFICATE OF SERVICE**

I, Scott A. Roberts, certify that this document, filed through the Electronic Case Filing (ECF) system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 19, 2026.

*/s/ Scott A. Roberts*
Scott A. Roberts